UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL W. WILEY,

    Plaintiff,

v.                                                  Case No. 2:20-cv-513-SPC-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

**REPORT AND RECOMMENDATION**

Plaintiff Michael W. Wiley seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 15),[1] and the parties filed a joint memorandum (Doc. 21). As discussed in this report, the decision of the commissioner should be affirmed.

**I.**     **Eligibility for Benefits and the Administration's Decision**

    **A.**     **Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like standing or walking, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.   Factual and procedural history

On September 25, 2017, Wiley applied for disability insurance benefits and supplemental security income benefits. (Tr. 18, 42-43, 66-67, 180-185, 188-189). Wiley asserted an onset date of August 10, 2017. (Tr. 20, 238, 241, 271, 280). Wiley's applications were administratively denied initially on November 27, 2017, and upon reconsideration on January 16, 2018. (Tr. 18, 93, 97, 102, 109). As of the

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

alleged onset date, Wiley was 52 years old and he had obtained a GED and completed "some college." He currently works 29 to 34 hours per week as a greeter at Walmart (Tr. 23, 25, 40, 240), and his past work includes jobs as a safety attendant and design manager. (Tr. 52).

At Wiley's request, Administrative Law Judge ("ALJ") Raymond Rogers held a hearing on February 4, 2019, concerning the denial of disability insurance benefits and supplemental security income benefits. (Tr. 33-41). This hearing, however, was postponed so Wiley could obtain representation. (Tr. 33-41). The ALJ completed Wiley's follow-up hearing with counsel present on May 20, 2019. (Tr. 489-528). The ALJ issued an unfavorable decision on June 10, 2019, finding Wiley not disabled from August 10, 2017, through the date of the decision. (Tr. 15-27).

Wiley's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Wiley then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the

> Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015); (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

4

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there is a sufficient number of jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id*. at 1359; *see also* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Wiley meets the insured status requirements through December 31, 2022. (Tr. 20). At step one of the evaluation, the ALJ found Wiley had not engaged in substantial gainful activity since August 10, 2017, the alleged onset date. (Tr. 20-21). At step two, the ALJ characterized Wiley's severe impairments as: diabetes with neuropathy; coronary artery disease status-post stenting; status-post myocardial infarction; hypertension; and obesity. (Tr. 21). At step three, the ALJ determined Wiley did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 21-22).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but may never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent handling and fingering; must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration and irritants such as fumes, odors, dust, and gases; and no exposure to hazardous machinery or unprotected heights.

(Tr. 22).

Consequently, at step four, the ALJ determined Wiley was not capable of performing his past relevant work. (Tr. 25). At step five, the ALJ found Wiley could perform other work that exists in significant numbers in the national economy. In support, a vocational expert testified three occupations represent the kinds of jobs an individual with Wiley's age, education, work experience, and RFC can perform:

- cashier II (DOT 211.462-010, light, SVP 2, 846,000 jobs nationally);
- information clerk (DOT 237.367-018, light, SVP 2, 71,000 nationally); and
- ticket taker (DOT 344.677-010, light, SVP 2, 22,000 jobs nationally).

(Tr. 26).[5]

---

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

**II.     Analysis**

Wiley's appeal presents the following questions for review:

1. whether the ALJ properly considered Wiley's borderline age status;

2. whether the ALJ is required to consider evidence submitted after the hearing; and

3. whether the Appeals Council properly considered Wiley's newly submitted evidence.

**A.     Standard of review**

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers

to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. Whether the ALJ properly considered Wiley's borderline age status

At step five, an ALJ must determine whether a claimant can adjust to other work sufficiently available in the economy based on age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 416.920(a)(4), 416.920(g), 416.920(c). With respect to age, the administration has adopted rules to account for the decreased likelihood of adjusting to a new job with increasing age that—in combination with other factors—provide a regulatory conclusion that there is an insufficient number of jobs to which the claimant could adjust. *See* 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2. These rules generate "grids," with each grid based on whether the claimant's RFC allows for the full range of occupations classified as sedentary, light, or medium on the physical exertion scale.

8

Among other age groups, these grids differentiate between persons of advanced age (55 and over) and those approaching advanced age (50-54). *See* SSR 83-11, 1983 WL 31252 (Jan. 1, 1983). The grids are not applied mechanically, and ALJs are afforded latitude to treat a claimant as within a higher age range when they are within months of its threshold. *See* 20 C.F.R. § 404.1563(b) ("We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."); *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 846 (11th Cir. 2017) (noting the Eleventh Circuit "has proscribed the mechanical application of the Grids 'on the basis of a claimant's age, in order to establish conclusively a claimant's adaptability to a new work environment'") (citing *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987)).

Conceding that, during the relevant time period, he could perform substantially all of the three work positions (standing, walking, and sitting) and four worker movements of objects (lifting, carrying, pushing, and pulling) at the level associated with light work,[6] Wiley agrees with the ALJ's use of the regulatory grid

---

[6] "[O]ccupations are classified as sedentary, light, medium, heavy, and very heavy according to the degree of primary strength requirements of the occupations. These consist of three work positions (standing, walking, and sitting) and four worker movements of objects (lifting, carrying,

for light work presented in Table 2 of the Medical-Vocational Guidelines. (Doc. 21, pp. 9-10). And within this grid framework, the Commissioner concedes that Wiley's skills were not transferrable.[7] (Doc. 21, p. 11). Thus, given his education and work experience, the grid would direct a finding of disabled if Wiley were of advanced age (55 or over), and not disabled if he was closely approaching advanced age (50-54). 20 C.F.R Part 404, Subpart P, Appendix 2, §§ 202.06, 202.14. But at the time of the ALJ's decision, Wiley was about three months shy of age 55. And while acknowledging his latitude to treat Wiley as within the next higher age category—because he was within a few days to a few months of reaching it—the ALJ declined to do so.[8]

This should come as little surprise to Wiley because neither he nor his counsel ever suggested to the ALJ that use of the higher age category would be warranted.

---

pushing, and pulling). SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). The term "substantially all" is used to define the minimum exertional capabilities that must be present. SSR 83-11, 1983 WL 31252 (Jan. 1, 1983). "For the purposes of determining whether the criteria of a rule are met, [the administration] consider[s] 'substantially all' to mean essentially all as opposed to 'in the main' or 'for the most part.'" *Id*.

[7] "The presence of acquired skills that are readily transferable to a significant range of semi-skilled or skilled work within an individual's residual functional capacity would ordinarily warrant a finding of not disabled regardless of the adversity of age, or whether the individual's formal education is commensurate with his or her demonstrated skill level." 20 C.F.R Pt. 404, Subpt. P, App. 2, § 202.00(e).

[8] As the ALJ reasoned: "I have considered, but decline to apply the Medical Vocational Rules non-mechanically" (Tr. 26). While perhaps inartful, this statement conveys that the ALJ knew he could use the higher age category if warranted, but he found it inappropriate to do so. And Wiley admits as much. (Doc. 21, p. 9 (conceding "the ALJ acknowledged that the borderline age policy applied")).

(Tr. 33-41, 489-528). Nor did Wiley argue for use of the higher age category in his Appeals Council brief. (Tr. 306-307). Nevertheless, the Appeals Council considered the issue *sua sponte*, stating: "[w]e considered the borderline age situation in this case, and we found that the factors in the record do not support application of the higher age category." (Tr. 1).

Perhaps this drew Wiley's attention to the issue, because now he takes exception with the ALJ not finding adequate support to depart from Wiley's chronological age category, and not explaining his analysis in so doing. But an ALJ is neither required to use the next higher age category when a claimant is within a few days or a few months of it, nor discuss any reasons for not doing so. Rather, the ALJ need only "***consider*** whether to use the older age category." 20 C.F.R. §§ 404.1563(b), 416.964(b) (emphasis added). And here, the ALJ's decision expressly states that he did. (Tr. 26).

While the administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), and its Program Operations Manual System ("POMS") advise ALJs to explain their decision to use or not use the next higher age category (HALLEX I-2-2-42 § C.5; POMS DI 25015.006 § G), these internal manuals were not promulgated in accordance with the procedural requirements for the creation of binding regulations, and so they neither bind the administration nor have the force of law. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("[T]he Claims Manual is

not a regulation. It has no legal force, and it does not bind the SSA."); *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003) ("POMS does not have the force of law."). Thus, the ALJ's omission of any explanation for his borderline-age decision does not constitute legal error, and the express acknowledgment that he considered using the older age category satisfied the regulatory standard.

Moreover, Wiley made no attempt to carry his burden of proof on this issue and he has therefore failed to show any prejudice. To justify a departure from the chronological age category to the next higher one, the claimant must be less adaptable to other work than the grid would generally suggest. For example, the grid category of "limited or less education" includes claimants who completed the 11th grade as well as those who completed the 4th grade. And the grid category of "skilled or semiskilled previous work experience" includes claimants who were recently employed in a skilled occupation as well as those who last worked in a semiskilled occupation in an isolated industry some fifteen years ago. The combination of being at the lower end of these continuums, such as having only an elementary school education and a distant or isolated prior work history, can adversely affect adaptability to other work and thereby support using the higher age category in a borderline situation. *See generally* HALLEX I-2-2-42; POMS DI 25015.006.

As part of the claimant's overall burden to prove disability, the claimant must make the showing necessary to support the use of a higher age category. *See*, *e.g.*,

HALLEX I-2-2-42 § C.3. But faced with a client who was engaged in substantial gainful activity during the four to five months leading up to the hearing (Tr. 493-494) and who had some college education (Tr. 497), Wiley's counsel during the administrative proceeding made no attempt to show, or even suggest, that use of a higher age category was warranted by the facts in this case. And Wiley has made no attempt here to articulate how his vocational factors could potentially justify treating him as if he fell within a category higher than his actual age.

Instead, Wiley essentially argues for a mechanical application of the grids such that by virtue of his being within three months of the higher age category, and nothing more, he would automatically fall within it. (Doc. 21, pp. 9-10 (arguing that the court should simply award benefits rather than remand)). Of course, this would squarely contradict the governing regulation, *see* 20 C.F.R. § 404.1563(b) ("We will not apply the age categories mechanically in a borderline situation."), and is therefore improper. And because Wiley has proffered nothing else, even if the ALJ had mechanically applied the grids, any such error would be harmless. As the Eleventh Circuit reasoned in *Mabrey v. Acting Comm'r of Soc. Sec. Admin.*, 724 F. App'x 726 (2018):

> Where the ALJ has applied the age grids in a mechanical fashion, a claimant should be given an opportunity to make a proffer of evidence regarding his ability to adapt. If he makes a proffer of substantial evidence that an ALJ could find credible and tending to show that the claimant's ability to adapt to a new work environment is less than the level established under the grids for persons his age, a court is required to remand the case for reconsideration of

>   the age/ability-to-adapt issue. If, on the other hand, the claimant does not make such a proffer, the ALJ's mechanistic use of the age grids would be harmless error and there would be no need to remand.

*Id*. at 730 (11th Cir. 2018) (citing *Patterson v. Bowen*, 799 F.2d 1455, 1458-1459 (11th Cir. 1986)).

In short, even though Wiley had neither raised the issue nor made the requisite showing, the ALJ properly identified the borderline age situation and considered departing from the chronological age category in the Medical-Vocational Guidelines when assessing Wiley's claim. Thus, with respect to the treatment of Wiley's borderline age status, Wiley has failed to show any reversible error.

    **C.**    **Whether the ALJ is required to consider evidence submitted after the hearing**

Wiley argues that the ALJ's failure to consider additional hip and pelvis x-rays submitted after the hearing, along with a report from nurse practitioner Carmen Sylvester (Tr. 309-312), violated his right to submit evidence in support of his case. (Doc. 21, pp. 14-18). However, "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform [the administration] about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). Indeed, if the claimant fails to do so the ALJ "may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of [20 C.F.R. § 404.935] apply." *Id*.

14

The three exceptions laid forth in paragraph (b) of this regulation explain the circumstances in which an ALJ will accept an untimely submission of evidence. 20 C.F.R. § 404.935(b)(1)-(3). Wiley did not allege that any of these exceptions applied when he submitted his evidence to the ALJ ***three weeks after*** his hearing and only one business day prior to the issuance of the ALJ's decision. (Tr. 308, 311).[9] Nor did Wiley invoke any such exception in his Appeals Council brief (Tr. 306-07), or in the joint memorandum filed with this court. (Doc. 21).

As such, Wiley failed to comport with the plain language of the administration's rules for submitting written evidence to an ALJ. 20 C.F.R. § 404.935(a). Wiley also failed to invoke any of the available exemptions which might excuse his late submission of additional evidence. 20 C.F.R. § 404.935(b)(1)-(3). Thus, the ALJ was not required to consider Wiley's late submission of evidence, nor did he err in choosing not to do so.

### D. Whether the Appeals Council properly considered Wiley's newly submitted evidence

Wiley argues that even if the ALJ were not required to consider evidence submitted after the administrative hearing but before the ALJ's decision was rendered, this evidence was in the record before the Appeals Council. So, Wiley

---

[9] Notably, Wiley's counsel told the ALJ during the second hearing that no additional evidence would be submitted. (Tr. 492).

15

claims the Appeals Council was required to, but failed, to consider such evidence. (Tr. 17-18).

While the Appeals Council is not required to specifically consider written evidence that is submitted after the deadline (20 C.F.R. § 404.935(a)), it must review "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a *reasonable probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (emphasis added). The Supreme Court has defined "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (citation omitted); *Foster v. Saul*, No. 8:19-cv-680-T-TGW, 2020 WL 3960250, *2 (M.D. Fla. July 13, 2020) (quoting *Bagley*).

Here the Appeals Council considered the additional evidence submitted after the deadline by Wiley, and whether there was a reasonable probability that this evidence would alter the outcome of the ALJ's decision. In doing so, the Appeals Council stated:

> You [Wiley] submitted a letter from Carmen Sylvester, NP, dated June 5, 2019 (2 pages); and treatment records from Radiology Regional Center dated May 28, 2019 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision.

(Tr. 2).

Wiley now argues that the Appeals Council was required to provide further discussion of its decision not to grant review based on his additional evidence.

16

However, the Eleventh Circuit has held that the Appeals Council is neither required "to provide a detailed discussion of a claimant's new evidence" nor "explain its rationale when denying a request for review." *Mitchell v. Comm'r of Soc. Sec. Admin*, 771 F.3d 780, 784-785 (11th Cir. 2014); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852-853 (11th Cir. 2015) (concluding "nothing suggests" that the Appeals Council failed to consider new evidence where the claimant submitted additional evidence and then the Appeals Council added new evidence to the record, stated it had considered this new evidence, and nevertheless denied review). Thus, Wiley's arguments to the contrary are without merit.

### III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the legal standard.

It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in defendant's favor.

Reported in Fort Myers, Florida, on February 8, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1.

**To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**